OPINION
{¶ 1} Appellant, Krystal Ebenschweiger, appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her daughter to the Butler County Children Services Board ("BCCSB").
 {¶ 2} Appellant is the mother of Daisia Ebenschweiger (DOB 5/18/2001).[1] Daisia was born while a neglect and dependency case involving her half sibling, Mario, was pending. Daisia was removed from the hospital after her birth and placed in the temporary custody of BCCSB. Daisia was adjudicated a dependent child, after the parties stipulated to the allegations of the complaint on Daisia. The complaint stated, in part, that appellant had tested positive for marijuana the day Daisia was born and was refusing to participate in court ordered services in Mario's case.
 {¶ 3} Appellant was required by court order in Daisia's case to undergo a psychological evaluation and a drug assessment, and attend parenting classes. Appellant was also provided twice weekly and later once weekly supervised visits with her daughter. Permanent custody of the half sibling Mario was subsequently granted to BCCSB.
 {¶ 4} BCCSB moved for permanent custody of Daisia and hearings were held on the motion on September 27, 2002 and continued to November 26, 2002.
 {¶ 5} Permanent custody was granted to BCCSB and appellant's parental rights were terminated by decision and entry on March 12, 2003. Appellant appeals the trial court's decision, presenting the following assignment of error:
 {¶ 6} "The Trial Court's Decision To Grant BCCSB Permanent Custody Is Not Supported By Clear And Convincing Evidence."
 {¶ 7} Appellant argues that the evidence presented at trial demonstrated that the best interest of the child would be served through a grant of custody to appellant. We do not agree.
 {¶ 8} We note that the record does not show that appellant objected to the magistrate's decision on permanent custody. Juv.R. 40(E)(3)(b), which as amended is Juv.R. 40(E)(3)(d), provides that a party "shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
 {¶ 9} Failure to draw the trial court's attention to possible error, by objection or otherwise, when the error could have been corrected, results in a waiver of the issue for purposes of appeal. In reMorris (Oct. 16, 2000), Butler App. No. CA2000-01-001, citing In reEtter (1998), 134 Ohio App.3d 484.
 {¶ 10} An exception to this waiver exists if plain error is found. In re Etter at 492; In re Dakota Hollin (Mar. 26, 2001), Butler App. Nos. CA2000-05-088, CA2000-06-107; In re Alyssa C., 153 Ohio App.3d 10,2003-Ohio-2673, at ¶ 33-35.
 {¶ 11} In a civil proceeding, plain error involves those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings. SeeGoldfuss v. Davidson, 79 Ohio St.3d 116, 122, 1997-Ohio-401.
 {¶ 12} Before a trial court can terminate parental rights and award permanent custody of the child to an agency, it must satisfy two statutory factors by clear and convincing evidence: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on the factors of R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); In re V.S., Lorain App. No. 03CA008273, 2003-Ohio-5612, at ¶ 4.
 {¶ 13} The trial court discussed the best interest factors first and we will do so in our discussion. According to R.C. 2151.414(D), the trial court shall consider all relevant factors, including but not limited to: 1) the interaction and interrelationship of the child with the parent, siblings, relatives, and foster caregivers, etc.; 2) the wishes of the child expressed by the child or the child's guardian ad litem; 3) the custodial history of the child; 4) the child's need for legally secure placement and whether that type of placement can be achieved without a grant of permanent custody, and 5) any factors in R.C. 2151.414((E)(7)-(11) that apply.
 {¶ 14} The trial court found by clear and convincing evidence that it was in the best interest of Daisia to grant permanent custody to BCCSB, presenting a detailed analysis of the best interest factors and their applicability to this case.
 {¶ 15} Specifically, the trial court made the following findings in its best interest determination, which we will list in an order different from that found in the trial court's judgment entry.
 {¶ 16} The trial court found that Daisia had been in the care of BCCSB for more than 12 of a consecutive 22-month period. Appellant sporadically visited with her child and had failed to visit Daisia for a four-month period in 2002. Appellant resumed visits the day before the first permanent custody hearing.
 {¶ 17} Appellant refused to participate in or complete court-ordered services. Appellant only completed her psychological evaluation a few days before the first permanent custody hearing.
 {¶ 18} The trial court found that Daisia appeared to be "somewhat" bonded to appellant when visits took place and appellant's interaction was appropriate. The trial court also found that Daisia was "very bonded" to her foster family, her extended foster family, and "extremely bonded" to her half sibling, Mario, who is placed in the same foster home. The foster family has expressed an interest in adopting Daisia.
 {¶ 19} The trial court found that appellant was incapable of meeting her own needs as evidenced by her lack of both stable housing and stable employment, or other income sources; appellant had eight different addresses since Daisia's birth. And finally, the child's guardian ad litem recommended that permanent custody of Daisia be granted to BCCSB.
 {¶ 20} The trial court engaged in the second part of the R.C.2151.414 analysis, finding both that Daisia had spent more than 12 of a consecutive 22-month period in BCCSB's custody, and that Daisia could not be placed with a parent within a reasonable time and should not be placed with a parent. See, also, R.C. 2151.413.
 {¶ 21} For the latter finding, the trial court listed the following findings, based upon five of the sixteen R.C. 2151.414(E) factors it found applicable to whether Daisia could be placed with appellant within a reasonable time or should not be placed.
 {¶ 22} The trial court found that appellant made no progress in achieving the case plan objectives geared toward reunification. R.C.2151.414(E)(1). The trial court stated that Daisia was born with marijuana in her system.[2] R.C. 2151.414(E)(1).
 {¶ 23} The trial court found that appellant participated sporadically in visitation with her child and failed to visit Daisia for four months. The trial court noted that appellant "claims she did not appear on time for visits because 9:00 a.m. was too early; she does not usually get up until noon." See R.C. 2151.414(E)(1).
 {¶ 24} The trial court also found that appellant hampered efforts to provide her with appropriate services because she refused to participate in assessments. R.C. 2151.414(E)(1), (2). The psychological evaluation appellant completed days before the first hearing found a mild level of mental retardation and recommended further assessment in that area. Mental health counseling was also recommended, but appellant indicated that she would not participate. See R.C. 2151.414(E)(1), (2).
 {¶ 25} Appellant demonstrated a lack of commitment toward her child by refusing to participate in services, by visiting Daisia sporadically and not at all for four months, and by failing to fulfill child support obligations. R.C. 2151.414(E)(4).
 {¶ 26} The trial court found that appellant abandoned Daisia when she failed to have contact with her for more than 90 days. In addition, appellant previously had her parental rights involuntarily terminated with respect to the half sibling Mario. R.C. 2151.414(E)(10); see, also, R.C.2151.011(C).
 {¶ 27} The trial court also noted that BCCSB had filed a motion to be relieved from reasonable efforts based upon the grant of permanent custody of half sibling Mario, and the period of more than 90 days during which appellant had no contact with Daisia. The trial court found that "[b]ased upon the findings above, BCCSB has proven those elements and this court finds that BCCSB is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home. That being said, this court finds that the BCCSB had made more than reasonable efforts to prevent the need for the ongoing removal of this child from her parent's care." See R.C.2151.419(A)(2)(d) and (e); R.C. 2151.011(C).
 {¶ 28} Our review of this case indicates that the trial court considered the relevant statutory criteria for permanent custody and made the appropriate findings, which are supported by the record. We find nothing in the proceedings below rising to the level of plain error. Appellant's assignment of error is overruled.
 {¶ 29} Judgment affirmed.
[1] The alleged father of Daisia and unknown fathers, who were served by publication, were found in default and are not parties to this appeal.
[2] A BCCSB caseworker testified at the permanent custody hearing and the trial court made the finding that Daisia tested positive for marijuana at birth, which was one of the concerns for removal of the child. However, no other mention of this fact was made or argued by any party, and appellant has not contested this finding at the trial level or on appeal.