DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Sandusky County Court of Common Pleas, Juvenile Division, terminating the parental rights of appellant, Marcella T., and awarding permanent custody of her two daughters, Katrina T. and Kaylee T., to appellee, the Sandusky County Department of Job and Family Services.
 {¶ 2} On May 9, 2001, appellee filed a complaint alleging that Katrina, born November 20, 1993, and Kaylee, born August 16, 1995, were neglected and dependent children. They, along with two younger half siblings were removed from their mother's care and placed in the temporary custody of appellee. It is undisputed that Merle T., the father of Katrina and Kaylee, has not had contact with his daughters since 1995, and, although notified of the proceedings below, never responded or participated in this cause.
 {¶ 3} All four children were adjudicated neglected and dependent on September 14, 2001. After the children's removal from their parents' care, case plans were formulated for appellant and Bill, the natural father of the two younger children. Bill complied with his case plan, and was eventually awarded legal custody of his children.
 {¶ 4} Appellant was offered services that included parenting classes, individual psychological counseling, housing and employment services, referrals to the Sandusky County Board of Mental Retardation and Developmental Disabilities, services provided by the Ohio Bureau of Vocational Rehabilitation, and a drug and alcohol assessment. Among other things, her case plan required her to find stable housing, to obtain a job, and to pay child support. Transportation was made available so that appellant could visit with her children. Appellant failed to avail herself of most of these services and failed to comply with her case plan.
 {¶ 5} Appellant did not visit the children between June 6, 2001 and August 30, 2001, and her caseworker had no idea where she was living. When appellant finally informed the caseworker of her whereabouts, the caseworker learned that appellant was living in a trailer with her father, George P. George was awaiting trial and was subsequently convicted of four counts of gross sexual imposition involving his granddaughters, Katrina and Kaylee. Over the next several months, until January 23, 2002, appellant visited her daughters only once, on September 13, 2001. She was also unable to obtain stable housing or employment.
 {¶ 6} On August 14, 2002, appellee filed its first motion for permanent custody of Katrina and Kaylee. However, the agency subsequently asked the trial court to continue the hearing on its motion because appellant's brother, Mark P., and his wife, Valerie, requested visitation with Katrina and Kaylee with a goal of possibly placing the children in their care. On October 29, 2002, the juvenile court granted the motion and added Mark and Valerie P. as parties to this case. However, after visitation commenced, questions arose concerning the viability of the placement of the girls with their aunt and uncle.
 {¶ 7} On November 5, 2002, appellee filed its second motion for permanent custody of Katrina and Kaylee. The motion was predicated upon the following bases: (1) the children could not or should not be placed with either parent within a reasonable time; (2) the children were abandoned by their parents; and (3) the children were in the temporary custody of the children services agency for 12 or more months of a consecutive 22 month period ending on or after March 18, 1999. The court scheduled the hearing on the motion for permanent custody for February 10, 2003.
 {¶ 8} Appellee also filed a motion to terminate Katrina's and Kaylee's visitation with Mark and Valerie P. Due to the considerable delay caused by this issue, appellee re-filed its motion for permanent custody on March 3, 2003. The agency set forth the same bases for the motion and provided several facts supporting each basis. Due to further delays caused by the visitation issue, a motion for legal custody of the children filed by Mark and Valerie P. (They dismissed their motion for legal custody of Katrina and Kaylee prior to the hearing on appellee's motion for permanent custody.), a request for a continuance and a motion for a change of custody by appellant, and a change of appointed counsel representing appellant, the hearing on the motion for permanent custody did not commence until May 19, 2003.
 {¶ 9} In its June 30, 2003 judgment, the trial court terminated appellant's parental rights and awarded permanent custody of Katrina and Kaylee to appellee. The court found that clear and convincing evidence established that (1) despite reasonable case planning and diligent efforts on the part of appellee to assist appellant in remedying the conditions causing the removal of Katrina and Kaylee from the home, appellant failed continuously and repeatedly to substantially remedy those conditions; (2) their parents had abandoned Katrina and Kaylee; (3) Katrina and Kaylee were in the temporary custody of appellee for 12 or more months of a consecutive 22 month period ending on or after March 18 1999; and (4) it was in the best interests of the children to award permanent custody to the public services agency. Appellant appeals that judgment and asserts the following assignments of error:
 {¶ 10} "I. The trial court erred in finding that the Sandusky County Department of Job and Family Services had made reasonable efforts to unify the minor children with appellant."
 {¶ 11} "II. The trial court erred in granting Sandusky County Department of Job and Family Services' motion for permanent custody as it was against the manifest weight of the evidence to grant it."
 {¶ 12} In her Assignment of Error No. I, appellant contends that the trial court erred in granting the motion for permanent custody because clear and convincing evidence failed to establish that appellee engaged in making reasonable case plans and diligent efforts to assist her in remedying the conditions that caused the removal of her children from her home.
 {¶ 13} Before a juvenile court can terminate parental rights and award permanent custody to a public or private children services agency, it must find that clear and convincing evidence supports both portions of the permanent custody test set forth in R.C. 2151.414(B). Specifically, the juvenile court must find that clear and convincing evidence establishes that one of the following requisites exists: (1) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public services agencies or private child placing agencies for 12 or more months of a consecutive 22 month period ending on or after March 18, 1999, and that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with his or her parents, R.C. 2151.414(B)(1)(a); (2) the child is abandoned, R.C. 2151.414(B)(1)(b); (3) the child is orphaned and has no relatives who are able to take permanent custody, R.C. 2151.414(B)(1)(c); or (4) the child has been in the temporary custody of one or more public services agencies or private child placing agencies for 12 or more months of a consecutive 22 month period ending on or after March 18, 1999. R.C. 2151.414(B)(1)(d).[1] The court must also find that clear and convincing evidence shows that permanent custody is in the best interest of the child, pursuant to the factors set forth in R.C. 2151.414(D). In re William S. (1996), 75 Ohio St.3d 95,99. Clear and convincing evidence is that which will cause the trier of fact to develop a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 14} As applied to the present case, the juvenile court found that three of the requisites, R.C. 2151.414(B)(1)(a), R.C.2151.414(B)(1)(b), and 2151.414(B)(1)(d), were applicable. However, as set forth infra, the court only needed to find that one of these requisites was satisfied. Undisputed clear and convincing evidence established that Katrina and Kaylee were in the temporary custody of the appellee for 12 or more months of a consecutive 22 month period ending on or after March 18, 1999. Thus, even though the juvenile court addressed the fact that appellant's children could not be placed with appellant within a reasonable time or should not be placed with her, and, in doing so, discussed the question of reasonable case planning and efforts by the agency to remedy the conditions that caused the removal of the children from the appellant's home, it was unnecessary to the resolution of this case. See In re Nice
(2001), 141 Ohio App.3d 445, 449, 2001-Ohio-3214; In re: C.N.,
8th Dist. No. 81813, 2003-Ohio-2048 at ¶ 22; In re Sarah S.,
6th Dist. Nos. E-02-052, E-02-053, E-02-054; 2003-Ohio-4730 at ¶ 13; In re Miqueal M., 6th Dist. No. L-02-1020, 2002-Ohio-3417 at ¶ 17. Accordingly, appellant's Assignment of Error No. I is found not well-taken.
 {¶ 15} In her Assignment of Error No. II, appellant maintains that the grant of the motion for permanent custody was against the manifest weight of the evidence. She makes three arguments under this assignment. First, she challenges the testimony of the children's counselor, Mary E. Kastner. Second, appellant argues that the evidence does not support a finding that she abandoned her daughters. Third, she complains that "the evidence offered at the permanent custody hearing shows that appellee "did not properly and/or fully consider the relative placement of the children" with her brother and sister-in-law; therefore, the agency "failed to find the least disruptive placement of the minor children."
 {¶ 16} Initially, we shall address appellant's second argument. A child is presumed abandoned when the parents fail to visit or maintain contact with the child for a period of 90 days, "regardless of whether the parents resume contact with the child after that period * * *." R.C. 2151.011(C). In the present case, appellant did not visit or have any contact with Katrina or Kaylee from September 13, 2001 until January 23, 2002, a period of more than 90 days. While there was testimony offered at the hearing on this matter that appellant would call the caseworker and leave a message that she wanted to visit her daughters, it is also undisputed she would not leave a telephone number where she could be reached, and she did not appear for scheduled visitations. Moreover, as stated previously, the trial court also relied on R.C. 2151.414(B)(1)(d) in finding that permanent custody of Katrina and Kaylee should be awarded to appellee, and this finding is supported by clear and convincing evidence.
 {¶ 17} Next, we turn to appellant's third argument under her Assignment of Error No. II. There is conflicting evidence in the record of this case on the issue of the exact point in time that Mark and Valerie P. asked that Katrina and Kaylee be placed in their care. Nonetheless, they were made parties to this case, a home study and a fire inspection were made of their home, and their nieces visited with them six times in October and November 2002.
 {¶ 18} The court also held a lengthy hearing on the issue of visitation with Mark and Valerie. The evidence offered at that hearing showed that Katrina and Kaylee had very little contact with Mark and Valerie when they were residing with their mother. They remembered Mark's name, but did not remember Valerie's name. The home study indicated that their home was small, having only two bedrooms, one for each of Mark and Valerie's children. The parents used the living room as their bedroom.
 {¶ 19} After the initial visit with Mark and Valerie, the remainder of the visits did not go well. Katrina became frightened when Mark showed the children how he was training the family dog to attack someone who might prove a threat to the children. Kaylee was touched on the "belly button" by her cousin, Brianna. Katrina became upset when she thought that Mark wanted her to watch a movie that she believed she was not allowed to watch. Of greater importance is the fact that both children associated Mark P. with his father, George. Katrina, the more vocal of the two girls, expressed a great fear that she would come in contact with George after he is released from prison in 2006. Based on the foregoing, we cannot say that the failure to place the children with their aunt and uncle was error, and appellant's third contention is meritless.
 {¶ 20} Due to the juvenile court's R.C. 2151.414(B)(1)(d) finding, we need only to discuss appellant's first argument as it relates to the trial court's determination of the best interests of Katrina and Kaylee. See In re Nice, 141 Ohio App.3d at 449;In re Sarah S., supra; In re: C.N., supra. Specifically, we shall decide whether plain error occurred in allowing the children's counselor to discuss her diagnosis of the children's psychological problems without asking the trial court to qualify her as a witness.
 {¶ 21} At the dispositional hearing, the children's counselor, Mary E. Kastner, testified that she had been counseling Katrina and Kaylee once per week since June 2002. Kastner also spoke with the children's foster mother, Rose Wensinger, each week to review each child's progress and any behaviorial changes.
 {¶ 22} Kastner diagnosed each child as suffering from "post-traumatic stress disorder" that resulted from George P.'s sexual abuse. She also testified that Katrina exhibited "role reversal" characteristics, frequently acting as the adult, rather than a child, in certain situations. Kastner also stated that this child had "deadlock tendencies when in conflict." The counselor described Kaylee as a "developmentally delayed" or "developmentally stuck" child. Trial counsel never objected to any of these opinions. Nevertheless, appellant argues that because Kastner was never qualified as an expert, the trial court erred in allowing her to make these statements.[2]
 {¶ 23} "Failure to either object or move to strike evidence at trial on the basis of hearsay, a witness' qualifications, or purported foundational deficiencies, waives any challenge on appeal, save plain error." Michigan Millers Mut. Ins. Co. v.Christian, 153 Ohio App.3d 299, 2003-Ohio-2455 at ¶ 32
(Citations omitted). See, also, In re Jones (Dec. 18, 2001), 10th Dist. No. 01AP-376, 2001-Ohio-3937, affirmed by In reJones, 96 Ohio St.3d 203.
 {¶ 24} The plain error doctrine is not favored in appeals of civil cases. Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, syllabus. Thus, it "may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Id.
 {¶ 25} In the case under consideration, appellee, prior to asking any questions related to the children's pyschological states, their mental and social development, and any physical difficulties, adduced the following information pertinent to a finding that Kastner could be qualified as an expert. The counselor has a Bachelor of Arts Degree from Sienna Heights University and a Masters Degree in Social Work from the University of Michigan. In 1988, she became a Licensed Social Worker in the state of Ohio. She later obtained a license to practice as a Licensed Independent Social Worker, which means that she can counsel without the supervision of a psychologist, psychiatrist or another Licensed Independent Social Worker. Kastner is required to take 30 hours of continuing education in a two year period. She has been providing counseling services for both public and private agencies for several years.
 {¶ 26} Based on the fact that appellee addressed all of the requirements needed to lay a foundation for expert testimony, we find that appellee's failure to ask the trial court to qualify Kastner as an expert is not such a serious error as to challenge the legitimacy of the underlying judicial process itself. Accord,In re Jones, supra. Accordingly, appellant's first argument is without merit, and we shall consider the testimony of Kastner, in its entirety, in examining whether clear and convincing evidence was offered to show that it was in the best interests of Katrina and Kaylee to be placed in the permanent custody of appellee.
 {¶ 27} In determining the best interest of the child in accordance with R.C. 2151.414(D), a trial court is required to consider all relevant factors including, but not limited to, the following:
 {¶ 28} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 29} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 30} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22 month period ending on or after March 18, 1999;
 {¶ 31} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 32} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 33} As applied to the present case, Katrina expressed a desire not to be returned to her mother's care. Evidence offered at the dispositional hearing demonstrated that during visits, appellant paid little or no attention to Kaylee, whose demeanor was described as apathetic. Although the two sisters enjoy being together and living with their foster parents, they both expressed a desire to be adopted rather than to live with any family member, including their aunt and uncle.
 {¶ 34} The record reveals that, in January 1997, appellant voluntarily allowed the Erie County Department of Jobs and Family Services to assume temporary custody of Katrina and Kaylee. Because appellant failed to comply with her case plans and was unable to find suitable housing, the children were not returned to her care for two years. The only reason that the Erie County Department of Jobs and Family Services relinquished temporary custody at that point was because its "legal time frames had totally run out." Subsequently, in 2001, the children were again removed from appellant's care in the instant case and remained in the temporary custody of appellee for 12 months of a 22 consecutive month period ending on March 18, 1999.
 {¶ 35} Both of these children have an immeasurable need for a legally secure placement. Testimony revealed that Katrina was forced to be the adult and caregiver in her family. As a result, she has never been allowed to be a child. Katrina is rule-oriented and becomes emotionally distraught if she believes that any of these rules are not being followed. She is also very fearful that her grandfather might be able to find her when he is released from prison. While living in the foster home, she was able to "catch up" academically with her classmates and received a B in each of her study areas. She also developed socially.
 {¶ 36} Kaylee is emotionally and developmentally delayed. When she was first placed in foster care, she was unable to bond with adults. As a consequence of the sexual abuse, Kaylee has certain physical problems, e.g., bedwetting. She has, however, improved academically and socially while in the care of Rose Wensinger. Kaylee is also fearful of ever seeing George again.
 {¶ 37} In reviewing the foregoing evidence, as well as all of the evidence offered at the dispositional hearing, we must conclude that clear and convincing evidence supports the trial court's finding that it is in the best interests of Katrina and Kaylee to be placed in the permanent custody of appellee. Accordingly, appellant's Assignment of Error No. II is found not well-taken.
 {¶ 38} On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Sandusky Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Knepper, J., Pietrykowski, J., concur.
[1] Indeed, R.C. 2151.413(D) does not allow a public or private children services agency any discretion under R.C.2151.414(B)(1)(d). R.C. 2151.413(D)(1) states that the agencyshall file for permanent custody of a child if that child has been in the temporary custody of the agency "for twelve or months of a consecutive twenty-two month period ending on or after March 18, 1999."
[2] Kastner also described Katrina as being "hopeless" about being adopted because the legal proceedings were taking so long and discussed Katrina's three biggest worries in life. She also stated that Katrina is a "perfectionist." Appellant claims that these descriptions are expert witness diagnoses, but we conclude that these statements are derived from her personal observations of the children and, therefore, constitute lay testimony. See Evid.R. 701.